IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| | * |
| CONVENIENCE RETAILING, LLC | |
| | * |
| Plaintiff, | |
| v. | *    CIVIL NO.: WDQ-05CV-1565 |
| | |
| SUNOCO, INC. (R&M) | * |
| | |
| Defendant. | * |

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION AND ORDER

Convenience Retailing, LLC ("Convenience Retailing") sued
Sunoco, Inc. (R&M) ("Sunoco") for a declaratory judgment.[1]
Pending is Sunoco's motions to dismiss the Complaint pursuant to
Federal Rule of Procedure 12(b)(6).  For the following reasons
the motion will be granted.


I.  Background

Convenience Retailing operates retail motor fuel facilities
in Maryland and Virginia, including Columbia Station Premises
under the trade name Columbia Mobil, and Dorsey Hall Mobil.
Compl. at ¶¶ 3-5.  Sunoco distributes and markets motor fuel to
retail outlets in Maryland.  *Id*. at ¶ 6.  On February 25, 2000,
Convenience Retailing purchased the business of Columbia Mobil.
*Id*. at ¶ 4.  On October 30, 2003, Convenience Retailing purchased

---

[1]*See* 28 U.S.C. §§ 2201 et seq. (2005).

1

Columbia Station Premises from Tosco Operating Company, Inc.
("Tosco").  *Id.; see* Tosco/Convenience Agreement at Compl. Ex. 1.
Under the terms of the Tosco/Convenience Agreement, Convenience
Retailing executed a Branded Reseller Agreement for a term of 12
years by which Tosco would pay Convenience Retailing $0.04 cents
for every gallon of motor fuel purchased.  *Id*. at ¶ 18; *see*
Compl. Ex. 3.  Addendum 1 to the Tosco/Convenience Agreement
granted Tosco the right to repurchase the Columbia Station
Premises if certain enumerated events should occur.  *See* Compl.
Ex. 2.; Memorandum of Repurchase Option at Ex. 4.

Tosco was acquired by Phillips Petroleum Company, which
merged with Conoco, Inc. to form ConocoPhillips Company ("COP").
Compl. at ¶ 16.  When the Tosco/Convenience Agreement and the
Branded Reseller Agreement were effective, Convenience Retailing
contracted with COP as the successor to Tosco.  *See* Compl. Ex. 3-
4.

Convenience Retailing leased Dorsey Hall Mobil from Mobil
Oil until March 1, 2000, when the interest was transferred to
Tosco and later to COP.  Compl. at ¶ 26.  Convenience Retailing
operates Dorsey Hall Mobil pursuant to a Mobil Branded PMPA
Franchise Agreement, similar to the Branded Reseller Agreement,
for the term May 10, 1999 to May 31, 2009.  *Id*. at ¶ 27.

On April 28, 2004, COP assigned to Sunoco its interests in
all agreements with Convenience Retailing regarding Columbia

Station Premises and Dorsey Hall Mobil.  *Id*. at ¶ 30.  As a result of the assignment, Sunoco became the supplier of motor fuel to the Columbia Station Premises and Dorsey Hall Mobil, as well as the sublandlord to Dorsey Hall Mobil.  *Id*. at ¶ 6.

On June 10, 2005, Convenience Retailing brought this action seeking a declaratory judgment that (1) Sunoco breached the Branded Reseller Agreement; (2) the Branded Reseller Agreement is terminated; and (3) the Tosco/Convenience Agreement is void upon termination of the Branded Reseller Agreement.

## II.  Analysis

### A.  Defendant's Motions to Dismiss

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et. al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md.

1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)).  The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id.*

1.  Assignment

In Maryland, contracts are freely assignable (1) "unless otherwise agreed...or (2) [if] the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance."  Md. Code Ann. Com. Law § 2-210(2)(2005).  When contract rights are assigned, "the assignee obtains its rights from the assignor and, thus, stands in the shoes of the assignor and acquires the same rights and liabilities as if it had been an original party to the contract."  *Women in Military Service for America Memorial Foundation, Inc. v. Hartford Fire Ins. Co.*, 21 Fed. Appx. 186, 192 (4th Cir. 2001).

The Branded Reseller Agreement contains assignment provisions allowing COP to "transfer or assign all or part of its rights or interest in this Agreement...without restriction, to any person or entity."  *See* Compl. Ex. 3 at § 12.7.  Convenience Retailing contends that additional assignment contract provisions in section 12.7(d) render COP's assignment to Sunoco invalid, because Convenience Retailing was not notified in advance of the

4

assignment.   Convenience Retailing's argument is without merit
because sections 12.7(a-c) acknowledge that an assignment may
affect Convenience Retailing's rights and obligations, the impact
is contemplated by the parties, and Convenience Retailing "may
not rely on or otherwise claim the impact as grounds for
constructive termination or claim for damages."  *Id.* at §
12.7(c).   Convenience Retailing cannot assert grounds for
contract termination on the basis of COP's assignment to Sunoco
in light of section 12.7(a-c).  *See B&P Enterprises v. Overland
Equipment Co.*, 133 Md. App. 583, 604, 758 A.2d 1026, 1037 (Md.
Ct. Spec. App. 2000) (clear and unambiguous language determines
the meaning of a contract).


2.  Breach of Contract

     Convenience Retailing contends that Sunoco breached the
Branded Reseller Agreement by discriminatory pricing, failure to
pay the facilities allowance, and undermining the Mobil brand and
system.  Convenience Retailing seeks termination of the Branded
Reseller Agreement for the alleged breaches.

     Termination of a contract is justified for a material
breach.  *Hess Energy, Inc. v. Lightning Oil Co., Ltd.*, 276 F.3d
646, 649 (4th Cir. 2002).  A breach is material if it goes to the
"root of the contract" such that it "affects the purpose of the
contract in an important or vital way."  *Id.; Bollech v. Charles*

*County*, 166 F. Supp. 2d 443, 548-459 (D. Md. 2001) (*quoting*
*Shapiro v. Massengill*, 105 Md. App. 743, 757 (Md. Ct. Spec. App.
1995)); *Dialist Co. v. Pulford*, 42 Md. App. 173, 178, 399 A.2d
1374, 1379 (Md. Ct. Spec. App. 1979) (a material breach renders
performance of the contract different than that contracted for by
the parties).

Normally whether a breach is material is a question of fact;
however, when the issue is so clear that only one decision
properly may be given, the court may decide the matter as if it
were a question of law.  *Speed v. Bailey*, 153 Md. 655, 661-662,
139 A. 534, 537 (Md. 1927); *Milner Hotels, Inc. v. Norfolk &
Western Railway Co.*, 822 F. Supp. 341, 345 (S.D.W.V. 1993),
*aff'd*, 19 F.3d 1429 (4th Cir. 1994).  To justify terminating the
contract, the breach must be a complete failure to perform that
defeats the object of the contract.  *Speed*, 153 Md. at 660, 139
A. at 536.

The purpose of the contract between Convenience Retailing
and Sunoco is clearly stated in section 1.1 of the Branded
Reseller Agreement, in which COP grants to Convenience Retailing
the right to use Mobil's trade name and proprietary marks,
purchase products from COP for resale, and operate a retail motor
fuel business.  As discussed above, Convenience Retailing cannot
assert grounds for contract termination when the contract clearly
and unambiguously states the purpose of the agreement and the

rights of the parties.  A contract is not ambiguous merely because the parties disagree about the interpretation of its terms.  *B&P Enterprises v. Overland Equipment Co.*, 133 Md. App. 583, 605, 758 A.2d 1026, 1037-1038 (Md. Ct. Spec. App. 2000)(whether a contract is ambiguous is a question of law).

(a)  Pricing

Convenience Retailing alleges that Sunoco charged Convenience Retailing the same price for motor fuel at Columbia Station Premises and the Dorsey Hall Station until September 1, 2004, when Sunoco began charging higher prices to Columbia Station Premises.  Convenience Retailing contends that the price difference is price discrimination in violation of the Branded Reseller Agreement.

Section 2.2 of the Branded Reseller Agreement states that Convenience Retailing "shall pay [COP] the price that is in effect at the time and place of delivery for that type or grade...; prices are prior to taxes and are subject to change by [COP] at any time and without notice."  The parties agreed to an open price term.  Sunoco retains the right to change pricing without notice and Convenience Retailing consented to this contract term.

Convenience Retailing argues that the Uniform Commercial Code ("UCC") requires open price terms to be fixed in good faith, meaning honesty in fact and the observance of reasonable

commercial standards of fair dealing in the trade.  *See* Md. Code
Ann. Com. Law § 2-103; § 2-305 (2005).  Convenience Retailing
also argues that a course of dealing between parties can give
meaning to an open price term, such as the prices charged to
Convenience Retailing prior to September 1, 2004.

Convenience Retailing also contends that Sunoco's motion to
dismiss should fail based upon *Montgomery Mall Service Center,
Inc. v. Motiva Enterprises, Inc*. (No. DKC 99-2167) (D. Md. 2000)
in which the course of dealing was an issue of fact.  In
*Montgomery Mall Service* neither party attached its contract to
the motions; in the absence of contractual provisions, the
allegations regarding unfair zone pricing raised an issue of
fact.  Here, Convenience Retailing has provided the Branded
Reseller Agreement, which states that prices may change and that
the assignment to Sunoco may affect the rights and obligations of
the parties.  *See* Ex. 3 at §§ 2.2; 12.7.

Importantly, Convenience Retailing has not alleged that
Sunoco's pricing has been set in bad faith, is unreasonable, or
has altered Convenience Retailing's contract performance.
Convenience Retailing has not alleged a material breach of the
contract that warrants termination on the basis of pricing.

(b)  Facilities Allowance

Under the Branded Reseller Agreement, Sunoco agrees to pay
Convenience Retailing $0.04 cents for every gallon of motor fuel

Convenience Retailing purchases.  Convenience Retailing contends that Sunoco has breached the contract by (1) holding the facilities allowance funds and applying such funds to future product purchases; and (2) refusing to pay or credit any facilities allowance on diesel fuel purchases.

Section 2.3 of the Branded Reseller Agreement provides that Sunoco will pay Convenience Retailing for all amounts due under the agreement in U.S. currency "except to the extent [COP] extends credit to [Convenience Retailing] under section 2.4." Section 2.4 provides that Sunoco may in its sole discretion extend credit to Convenience Retailing.  Convenience Retailing has not alleged lack of payment, but instead an alternative form of payment for which the contract provides.  As a result, Convenience Retailing has not alleged a breach of contract, because Sunoco is applying the facilities allowance for future product purchases as a form of credit.

Convenience Retailing also contends that Sunoco has failed to pay or credit any facilities allowance to Convenience Retailing for diesel purchases.  The Purchase Schedule attached to the Branded Reseller Agreement provides for diesel contract volumes over the term of the contract, which Sunoco admits is due to Convenience Retailing in the amount of $2,000.[2]  Sunoco should pay Convenience Retailing for the facilities allowances due for

---

[2] The approximate amount due to Convenience Retailing as of July 2005.

diesel fuel purchases pursuant to the contract.

Sunoco has failed to comply with this provision of the contract, but the failure to make the required diesel fuel payments does not justify terminating the contract nor does it amount to a material breach.  The lack of payment does not go to the root of the contract and Convenience Retailing can seek monetary damages in compensation.  *See Evergreen Amusement Corp. v. Milstead*, 206 Md. 610, 621, 112 A.2d 901, 906 (Md. 1955); *Speed v. Bailey*, 153 Md. 655, 660, 139 A. 534, 536 (Md. 1927) (departure from compensation in damages for slight breaches "would result in permitting any deviation, no matter how minute or unimportant, to be made the basis for the rescission of the contract").  Convenience Retailing has not alleged a material breach of contract warranting termination of the contract; Convenience Retailing may seek an appropriate monetary award for the facilities allowances due for diesel fuel purchases.

(c)  Mobil Brand and System

Convenience Retailing contends that Sunoco has undermined the Mobil brand and system by eliminating brand enhancement programs, threatening elimination of the Mobil brand in 2007, and undermining Convenience Retailing's ability to acquire fuel from sources other than Sunoco.

The Branded Reseller Agreement states "unique and specialized training, management, marketing techniques and

10

materials and socially responsible programs" are some of the distinguishing characteristics of the Mobil system.  *See* Ex. 3 Recitals at 1.  There is no contractual obligation for Sunoco to continue the educational alliance program and the spring and fall improvement programs that Convenience Retailing expected.  There is no allegation that Sunoco has eliminated its training and marketing techniques; thus, Convenience Retailing has not asserted a claim for breach of contract.

Convenience Retailing's concerns about possible elimination of the Mobil brand in 2007 are premature and do not state a material breach of contract.  As for undermining Convenience Retailing's ability to purchase Mobil brand motor fuel from other sources, it is undisputed that Sunoco is the only authorized supplier of Mobil branded motor fuel in Maryland.  Accordingly, Convenience Retailing has failed to allege a claim for a material breach of the contract.

### CONCLUSION

For the reasons discussed above, Sunoco's motion to dismiss will be granted.


December 14, 2005                    _____/s/_____
                                    William D. Quarles, Jr.
                                    United States District Judge